OPINION
{¶ 1} Thomas W. Thompson, Jr., defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas in which the court found him guilty, pursuant to a jury verdict, of murder with specification, in violation of R.C. 2903.02, which is an unclassified felony, and of tampering with evidence, in violation of R.C. 2921.12, which is a third-degree felony.
 {¶ 2} On January 14, 2005, Sharon Montgomery held a party. Appellant attended the party, as did Sheila Montgomery, the deceased victim and sister of Sharon. Appellant and Sheila had been dating for approximately one year and had known each other for approximately three years. At approximately 11:30 p.m., Sheila and appellant left the party with MaryAnn Benton, Sheila's first cousin, and Benton's husband. Benton and her husband dropped off Sheila and appellant at appellant's house. The next day, January 15, 2005, Benton visited with appellant and Sheila at appellant's house at approximately 2:00 p.m. Appellant paid Benton $20 for some jewelry she sold him, and she saw a gun with a "cylinder" in a drawer when he retrieved the money. Also on that day, Sheila stopped by Sharon's home for 20 minutes and then left. Later, on January 15, 2005, at about 6:00 p.m., Benton returned to appellant's house. Appellant arrived at the door and told Benton that Sheila had left, he was sleeping, and he did not want any company. Benton returned to appellant's house around 2:00 p.m. on January 16, 2005. Appellant was on his porch and told her he was not feeling well, and she left.
 {¶ 3} In the early evening on January 16, 2005, Earl Benner was in an alley on the same block as appellant's house looking for discarded antiques when he noticed what appeared to be a body under a trashcan. Benner contacted the police, who discovered the body was that of Sheila, and she had been shot in the upper chest.
 {¶ 4} On January 17, 2005, Benton went to appellant's house at about 1:00 p.m., and she and appellant drank alcohol together but did not discuss Sheila. Benton left but returned to appellant's house around 6:00 p.m., at which time appellant told Benton that the police had found Sheila dead and told her to tell her family that he did not kill her. He told her that the detectives had been to his house and they would probably arrest him for her murder.
 {¶ 5} During a canvas of the neighborhood where Sheila's body had been found, appellant told detectives that he had seen Sheila "around" but did not know her name or how to contact her family. He told detectives that he had had sex with Sheila on January 13, 2005. During an interview on January 20, 2005, appellant admitted to the police that he knew Sheila and her family but that Benton was trying to frame him for her murder. He claimed Sheila had stolen some things from him.
 {¶ 6} After police questioned several other witnesses in the neighborhood and executed a search warrant on appellant's house, on April 20, 2005, appellant was indicted on one count of aggravated murder, with specification, and one count of tampering with evidence. Prior to trial, the aggravated murder count was amended to the lesser-included offense of murder, with specification. On October 17, 2005, a trial was held, and the jury subsequently rendered a verdict finding appellant guilty of murder, with specification, and tampering with evidence. On October 27, 2005, the trial court issued a judgment finding appellant guilty of the charges as found by the jury and sentencing appellant to incarceration of 15 years to life on the murder charge consecutive to a three-year term for the specification charge, and five years on the tampering with evidence charge, to be served concurrently to the term for the murder and specification charges. Appellant appeals the judgment of the trial court, asserting the following assignment of error:
THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 7} Appellant asserts in his assignment of error that the trial court's judgment was not supported by sufficient evidence and was against the manifest weight of the evidence. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 8} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the factfinder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy (1998),84 Ohio St.3d 180, 193-194; State v. Eley (1978),56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 9} R.C. 2903.02 provides, in pertinent part:
(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.
 {¶ 10} R.C. 2921.12 provides, in pertinent part:
(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]
 {¶ 11} In the present case, appellant contends that, because all of the evidence against him was circumstantial, there was insufficient evidence and the judgment was against the manifest weight of the evidence. Specifically, appellant contests the testimony of the state's witnesses. Appellant contends it would have been unreasonable for the jury to interpret the testimony of these witnesses — particularly Brad Harden, a 16-year-old high school student and appellant's neighbor; Adam Carpenter, who lived in a home near where Sheila's body was found; and Benton — as proof of his guilt.
 {¶ 12} Harden testified that, in the afternoon on January 15, 2005, he was in his driveway and heard an argument between a male and female coming from appellant's home next door, which was only about five or six feet away. Harden testified that the male's voice was appellant's, but he did not recognize the female's voice. He never heard a gunshot. He further testified that, at 9:00 a.m. on January 16, 2005, he was taking the trash out in the alley behind his house, and he saw a trashcan with a dark form under it and trash piled over it. He later realized it was probably a body when he saw police cruisers and ambulances in the alley. Harden also stated that he once saw appellant carrying a black revolver.
 {¶ 13} Carpenter testified that, at approximately 10:30 p.m. on the night of January 15, 2005, he walked onto his back porch to smoke and heard moaning and groaning coming from the alley behind his house. The noises lasted 10 to 12 minutes. He described the sounds as being like somebody having sex in a car or a male "really frustrated" trying to move furniture.
 {¶ 14} Benton testified that, after the party on January 14, 2005, she and her husband dropped off Sheila and appellant at appellant's house. At 2:00 p.m. on January 15, 2005, she visited with appellant and Sheila at appellant's house. While appellant was getting some money for jewelry he was buying from her, she saw a gun with a "cylinder" in his drawer. Benton returned to appellant's house at about 6:00 p.m. that day, but appellant arrived at the door and told Benton that Sheila had left, he had been sleeping, and he did not want any company. Benton returned to appellant's house around 2:00 p.m. on January 16, 2005. Appellant was on his porch and told her he was not feeling well, so she left.
 {¶ 15} Benton further testified that, on January 17, 2005, at about 1:00 p.m., she again went to appellant's house, and she and appellant drank alcohol together but did not discuss Sheila. Benton left and then returned to appellant's house around 6:00 p.m., at which time appellant told Benton that the police had found Sheila dead and told her to tell her family that he did not kill her. He told Benton that, after Benton had left them on January 15, he gave Sheila $50, they had sex, and then they wrestled around, during which she cut her finger. Appellant first told Benton that he went to the bathroom, and Sheila yelled to him she was leaving and would be back. He told her that he then went into the dining room and discovered $200 and his gun were gone. Benton had previously seen several guns at appellant's house, but appellant told her that he had gotten rid of all of them "a couple" of months before. Appellant also told her that, if the police arrest him, she should use his bankcard to pay his mortgage for him while he was in jail.
 {¶ 16} Benton then testified that, on January 19 or 20, 2005, she was talking to appellant again, and this time he told her a different story about how Sheila had left his house on January 15, 2005. He stated that, after he and Sheila had sex, wrestled around, and Sheila cut her finger, he went to sleep. He told her that, after he woke up, he heard a commotion and Sheila's voice in the alley, but he could not see anyone in the alley. After telling her this story, he repeatedly told her that he did not kill Sheila.
 {¶ 17} Columbus Police Detective Steve Eppert testified that, when he went to appellant's home during a neighborhood canvas, appellant stated he had seen Sheila "around" but did not know her name or how to contact her family. Appellant stated he knew Sheila from a local bar and apartment complex. He stated he saw Sheila at a party on January 13, 2005, the two returned to his home, where they had sex, and then she left. Appellant later told the police that Sheila spent the night and then left the next morning. During a follow-up interview on January 20, 2005, appellant admitted he was "misleading" during the first interview. After the police confronted him with statements from other witnesses, appellant told the police he knew the victim, the date of the party was actually January 14, 2005, and that Sheila had stolen $300 and "shit" from him. Appellant would not elaborate on the "shit" portion of his comment. Appellant believed Benton was trying to set him up for the crime. During a search of appellant's home, the police found two live .22 caliber short rounds, 18 live .22 caliber long rounds, a .22 caliber rifle, and an empty box for a TEC-22 firearm, a magazine clip, and two parts of magazine clips. Eppert admitted that there was no confession, fingerprints, murder weapon, or blood evidence in this case.
 {¶ 18} Mark Hardy, a criminalist with the Columbus Police Department, testified that the rifle recovered from appellant's home did not fire the lethal bullet, a .22 caliber, long-rifle round, which can be fired from a revolver, a semiautomatic pistol, or a rifle. However, he said he could not eliminate several rounds recovered from appellant's home as being from the same manufacturer as the lethal bullet. Hardy also stated the lethal bullet could have been fired from the magazines recovered from appellant's house.
 {¶ 19} With regard to sufficiency of the evidence, the issue is whether there exists any evidence in the record that a rational juror could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt. In the present case, there existed sufficient evidence. A conviction can be sustained based on circumstantial evidence alone. State v. Franklin (1991), 62 Ohio St.3d 118,124, citing State v. Nicely (1988), 39 Ohio St.3d 147, 154-155. Indeed, circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence. State v. Ballew (1996),76 Ohio St.3d 244, 249, citing State v. Lott (1990),51 Ohio St.3d 160, 167, citing Michalic v. Cleveland Tankers, Inc. (1960),364 U.S. 325, 330, 81 S.Ct. 6. In some instances, certain facts can only be established by circumstantial evidence. State v.Mobus, Butler App. No. CA2005-01-004, 2005-Ohio-6164, at ¶ 51.
 {¶ 20} Construing the evidence most favorably for the state on this sufficiency challenge, a reasonable jury could have found sufficient circumstantial evidence to find beyond a reasonable doubt that appellant purposely caused Sheila's death and concealed evidence with the purpose to impair its value or availability as evidence knowing that an investigation was likely to be instituted. Appellant was heard arguing with a female in his house during the afternoon on January 15, 2005, and, at 6:00 p.m., appellant had refused to let Benton enter his house. That same night, Carpenter heard groaning and sounds coming from the alley as if somebody were "moving furniture." Appellant's actions were also suspicious in that, on January 17, 2005, he told Benton conflicting stories about what had happened the last time he saw Sheila alive. Appellant also told Benton that he had gotten rid of all of his guns, yet she saw a .22 caliber revolver in his house on January 15, 2005, and police found several in his residence. The existence of the guns in the house demonstrates that appellant had access to firearms and an opportunity to commit the crime. See State v. Patterson (Apr. 29, 2002), Butler App. No. CA2001-01-011. He also told Benton that he knew the police were going to return to his home and arrest him and that she should pay his mortgage while he was in jail.
 {¶ 21} In addition, appellant admitted he lied to the police during the initial interview when he claimed he did not know Sheila's name or her family. This court has found that a defendant's "guilty knowledge" may be shown by false or misleading statements the defendant makes to police officers to mislead the police or ward off suspicion. See State v. McGuire
(Nov. 13, 1997), Franklin App. No. 97APA02-180, citing State v.Walden (Apr. 8, 1982), Franklin App. No. 81AP-335. We have also found that such exculpatory statements, "when shown to be false or misleading, are circumstantial evidence of guilty consciousness and have independent probative value." Walden,
supra. Appellant was also known by several witnesses to own and carry guns, and he owned guns of the same caliber that could have fired the fatal bullet that killed Sheila. See State v. Martin,151 Ohio App.3d 605, 2003-Ohio-735, at ¶ 36 (evidence that defendant owned the same type of weapon used in murder supported finding of guilt); State v. Fuller (Aug. 6, 1992), Cuyahoga App. No. 60915 (defendant owned a handgun of the same caliber that was used in the murder). There was also expert testimony that some of the ammunition found in appellant's house was of the same caliber as the fatal bullet and could have come from the same manufacturer as the fatal bullet. See State v. Issa
(2001), 93 Ohio St.3d 49, 67 (that ammunition found in defendant's home was the same caliber ammunition as that used in murders supported finding of guilt). Although there was no direct evidence of appellant's guilt, we find, after viewing this circumstantial evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Therefore, there was sufficient evidence to support the guilty verdicts in the present case.
 {¶ 22} As for appellant's manifest weight argument, appellant presented no witnesses at trial. The only evidence to weigh, therefore, is the testimony of the state's witnesses. There was no apparent conflict in any of the testimony presented by the state's witnesses, and appellant points to none. Although appellant contests Harden's testimony on the basis that he was only 16 years old, the jury apparently believed his testimony. As indicated above, the trier of fact has the primary responsibility for determining the credibility of the witnesses. See State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Further, although appellant asserts that Harden did not see who was arguing in the house next door, Carpenter never saw the source of the groaning noises coming from the alley, and appellant's refusal to let Benton enter his house on January 15, 2005, was because he was ill, the jury apparently used the testimony of these witnesses as links in the chain of circumstantial evidence to find appellant guilty of the crimes, and this court is without significant reason to second-guess the weight the jury gave to this testimony. See, e.g., State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 54 (stating that the jury has the primary responsibility to weigh the evidence). Therefore, viewing all the reasonable inferences that arise from the evidence and having no reason to disturb the weight given to this evidence by the jury, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice. Thus, the jury's verdict was not against the manifest weight of the evidence. For these reasons, appellant's assignment of error is overruled.
 {¶ 23} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt, P.J., and McGrath, J., concur.