[Cite as *State v. Garcia*, 2021-Ohio-4480.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NOS. 2020-A-0034 |
| Plaintiff-Appellee, | 2020-A-0035 |
| - v - | Criminal Appeals from the Court of Common Pleas |
| PHILLIP GARCIA, | |
| Defendant-Appellant. | Trial Court Nos. 2018 CR 00765 2018 CR 00560 |

## **O P I N I O N**

Decided: December 20, 2021
Judgment: Affirmed in part, reversed in part, and remanded

---

*Dave Yost*, Ohio Attorney General, Ohio Attorney General's Office, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH 43215, and *Andrea K. Boyd*, Assistant Attorney General, Ohio Attorney General's Office, State Office Tower, 30 East Broad Street, 23rd Floor, Columbus, OH 43215 (For Plaintiff-Appellee).

*Joseph R. Klammer*, The Klammer Law Office, Ltd., 7482 Center Street, Unit 6, Mentor, OH 44060; *J. Reid Yoder* and *Benjamin R. Sorber*, Dicaudo, Pitchford & Yoder, LLC, 209 South Main Street, Third Floor, Akron, OH 44308 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Phillip Garcia, appeals his convictions and sentence following the entry of guilty pleas to multiple counts of Compelling Prostitution and Sexual Imposition. For the following reasons, we affirm Garcia's convictions in whole and his sentence in part. We reverse the sentences imposed for Compelling Prostitution and remand for further proceedings consistent with this opinion.

{¶2} On August 28, 2018, the Ashtabula County Grand Jury in Case No. 2018 CR 00560 indicted Garcia for five counts of Rape, felonies of the first degree in violation of R.C. 2907.02(A)(2); seven counts of Compelling Prostitution, felonies of the second degree in violation of R.C. 2907.21(A)(1); eight counts of Compelling Prostitution, felonies of the third degree in violation of R.C. 2907.21(A)(3); four counts of Corruption of a Minor, felonies of the fourth degree in violation of R.C. 2907.04(A); and two counts of Unlawful Sexual Conduct with a Minor, felonies of the third degree in violation of R.C. 2907.04(A).

{¶3} On August 30, 2018, Garcia was arraigned and entered a plea of not guilty.

{¶4} On November 28, 2018, the Ashtabula County Grand Jury in Case No. 2018 CR 00765 indicted Garcia for Rape, a felony of the first degree in violation of R.C. 2907.02(A); Compelling Prostitution, a felony of the second degree in violation of R.C. 2907.21(A)(1); four counts of Compelling Prostitution, felonies of the third degree in violation of R.C. 2907.21(A)(2); Compelling Prostitution, a felony of the third degree in violation of R.C. 2907.21(A)(3); Unlawful Sexual Conduct with a Minor, a felony of the third degree in violation of R.C. 2907.04(A); and Bribery, a felony of the third degree in violation of R.C. 2921.02(C).

{¶5} On December 17, 2018, Garcia was arraigned and entered a plea of not guilty.

{¶6} On March 7, 2019, the trial court denied Garcia's Motion to Sever Trial as to each alleged victim in both Indictments and ordered that the two Indictments be tried together as if one prosecution were under a single Indictment, as provided for in Criminal Rule 13.

{¶7} On the same date, the trial court denied Garcia's Motion to Obtain Inmates'

2

Recorded Telephone Calls, requesting all recorded prison calls (except those with their attorneys) for four prison inmates who were either victims or witnesses in the cases.

{¶8} On March 25, 2019, the trial court consolidated both cases under Case No. 2018 CR 00765.

{¶9} On May 13, 2020, Garcia pled guilty to four counts of third-degree felony Compelling Prostitution in violation of R.C. 2907.21(A)(3) and seven amended counts of Sexual Imposition, misdemeanors of the third degree in violation of R.C. 2907.06(A)(4) and (C), in exchange for the dismissal of the remaining charges.

{¶10} On July 27, 2020, Garcia filed a Motion to Withdraw Guilty Pleas which was denied by the trial court in a written entry dated July 31.

{¶11} On July 28, 2020, Garcia filed Objections to the Presentencing Investigation Report and a Request for New, Independent Unbiased Report which was denied by the trial court in a written entry dated July 30.

{¶12} On the same date, Garcia filed a Motion for Continuance of the Sentencing Hearing, scheduled for July 29, 2020, which the trial court denied in a written entry dated July 31.

{¶13} On July 29, 2020, the trial court heard argument on Garcia's three pending motions and denied them. Thereafter, the sentencing hearing was held. For three counts of Compelling Prostitution (Counts 7, 12, and 29), the trial court sentenced Garcia to five years of incarceration. For the fourth count of Compelling Prostitution (Count 20), the court sentenced Garcia to three years of incarceration. For each count of Sexual Imposition (Counts 3, 22, 25, 31, 32, 33, and 34), the court sentenced Garcia to sixty days of incarceration. The court ordered the sentences for Compelling Prostitution to be

3

served consecutively with each other and concurrently with the sentences for Sexual Imposition for an aggregate sentence of eighteen years.

{¶14} On July 31, 2020, Garcia's sentence was memorialized in a written Judgment Entry.

{¶15} On August 5, 2020, Garcia filed a Notice of Appeal. On appeal, he raises the following assignments of error:

[1.] The trial court erred in overruling Mr. Garcia's Motion to Withdraw his Guilty Plea.

[2.] The trial court's sentence of five years on Counts seven (7), twelve (12), and twenty-nine (29) exceeded the maximum allowable sentence, rendering Mr. Garcia's sentence *void ab initio*.

[3.] The trial court erred by imposing a maximum and consecutive sentence on Mr. Garcia when it failed to consider mitigating factors pursuant to R.C. § 2929.11, R.C. § 2929.12, and R.C. § 2929.14.

[4.] The trial court erred in its failure to grant Mr. Garcia's Motion to Continue Sentencing.

[5.] The trial court erred in its failure to disqualify the probation officer from this case in the interest of justice and fairness.

[6.] The trial court violated Mr. Garcia's due process rights by precluding him from discussing the alleged ages of the victims and statements of the victims, but allowing the State to introduce victim statements and evidence that the victims were younger than the ages as stated in the parties' plea agreement.

[7.] The trial court erred when it failed to substantially comply with Crim.R. 11 during Mr. Garcia's guilty plea.

[8.] The trial court erred in denying Mr. Garcia's motion to sever his charges and order separate trials.

[9.] The trial court erred in allowing the State to preclude certain

4

audio recordings of jail calls from discovery.

{¶16} The assignments of error will be addressed out of order for clarity.

{¶17} In the seventh assignment of error, Garcia argues that the trial court did not substantially comply with Criminal Rule 11 by failing to inform him that a guilty plea waives his right to appeal pretrial rulings.

{¶18} In order to enter a valid plea in a criminal case under the United States and Ohio Constitutions, "the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "[I]n order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review," Ohio Criminal Rule 11(C) was adopted. *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990); *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8 ("Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty"). The Rule "requires the trial judge to personally inform the defendant of the constitutional guarantees he waives by entering a guilty plea" in addition to "certain other matters," such as "that the defendant understands the effect of the plea of guilty." *Nero* at 107; Crim.R. 11(C)(2)(b).

{¶19} "The plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). "The information that a guilty plea is a complete admission of guilt, along with the other information required by Crim.R. 11, ensures that defendants enter pleas with knowledge of rights that they would forgo and creates a record by which appellate courts can determine whether pleas are entered voluntarily." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 11.

{¶20} The written Plea of Guilty and Waiver of Rights signed by Garcia contained

5

the following provision:

> I further understand that, if I was convicted after a trial, I would have the right to appeal pretrial matters, and sentencing matters. But I also understand that, by pleading guilty, I waive my right to challenge any issues on appeal other than: ineffective assistance of counsel, prosecutorial misconduct, the manner in which the plea proceeding is conducted, and the sentence ultimately imposed by this Court. Similarly, I understand that by pleading guilty, I will not be able to appeal pretrial issues, such as: discovery disputes, pretrial court proceedings, and this Court's pretrial orders and rulings.

{¶21} During the plea colloquy, the trial court inquired of Garcia as follows regarding his appellate rights:

> The Court: First. I'm going to ask you, you do understand your plea to [be] one of guilt pursuant to the plea agreement that you entered in this case, correct?
>
> Garcia: Yes, Your Honor.
>
> * * *
>
> The Court: Do you understand that you're admitting that you committed the crimes stated in the plea agreement?
>
> Garcia: Yes, Your Honor.
>
> The Court: And you understand that you're giving up any defenses that you have to those crimes?
>
> Garcia: Yes, Your Honor.
>
> * * *
>
> The Court: You do have appeal rights. And do you understand you have the right to appeal a maximum sentence? You understand that?
>
> Garcia: Yes, Your Honor.

6

\* \* \*

The Court:     Do you understand you waive the right to appeal a finding of guilty as a result of your guilty plea today?

Garcia:          Yes, Your Honor.

The Court:     Do you understand that while you waive and give up your right to appeal a finding of guilty as a result of your guilty plea today, you don't necessarily lose your right to appeal with respect to other matters connected with your case.  Do you understand that?

Garcia:          Yes, Your Honor.

The Court:     Do you understand that as a result of your guilty plea, you might waive and give up your right to appeal any errors you do by your guilty plea today [sic], you give up your right to appeal any errors that might have occurred at trial, because you're waiving your right to a trial.  Do you understand that?

Garcia:          Yes, Your Honor.

The Court:     Do you understand that depending upon the outcome of your case, you may possess the right to appeal this Court's decision with respect to other matters, such as your sentence.  Do you understand?

Garcia:          Yes, Your Honor.

{¶22}  It is asserted that the trial court "made no mention that Mr. Garcia would be waiving his right to appeal any pretrial rulings" and, therefore, he did not subjectively understand the nature of the guilty pleas.  Moreover, he would not have entered the guilty pleas "had he been aware of the [pretrial] issues surrounding" discovery and joinder.  Appellant's brief at 29.

{¶23}  We find no error.  It is well-established that Criminal Rule 11 does not

7

require a trial court to advise a defendant that he is waiving the right to appeal pretrial issues by entering a guilty plea. *State v. Smith*, 2d Dist. Montgomery No. 28339, 2020-Ohio-3901, ¶ 12 ("the defendant * * * *does not have to be informed that by pleading guilty he is waiving his right to appeal any pretrial rulings*") (citation omitted); *In re M.A.*, 12th Dist. Brown No. CA2018-07-005, 2019-Ohio-829, ¶ 41; *State v. Jordan*, 9th Dist. Summit No. 27690, 2015-Ohio-4354, ¶ 6; *State v. Cumberland*, 4th Dist. Highland No. 04CA14, 2005-Ohio-1229, ¶ 17. Unless a defendant has been affirmatively misinformed or misled about the consequences of pleading guilty, this court is aware of no authority for the proposition that a guilty plea is invalid despite compliance with the requirements of Criminal Rule 11(C).

{¶24} At the very least, Garcia is required to demonstrate that, as the result of some error or defect in the conduct of the taking of his plea, he suffered prejudice, i.e., that but for the error or defect he would not have entered the plea. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 16. Moreover, such prejudice must appear "on the face of the record." It is insufficient for demonstrating prejudice that a defendant merely challenges the plea on appeal. *Id.* at ¶ 24. Nothing on the face of the record before this court suggests prejudice. The trial court orally advised Garcia that by pleading guilty he would be waiving the right to appeal certain issues. These issues were expressly stated in the written plea agreement to include discovery and other pretrial issues. Nowhere does Garcia indicate the ability to appeal pretrial issues played any role in his decision to plead guilty. *State v. Brusiter*, 8th Dist. Cuyahoga No. 98614, 2013-Ohio-1445, ¶ 7 ("where a trial court carries out the mandates of Crim.R. 11(C)(2), no prejudice accrues to the appellant where the court fails to inform him of the effect of his

Case Nos. 2020-A-0034, 2020-A-0035

plea on pretrial motions").

{¶25} Lastly, we note that, at the time Garcia entered his guilty pleas to significantly reduced charges, he was advised that he faced a maximum potential sentence of five years for each felony charge of Compelling Prostitution and sixty days for each misdemeanor charge of Sexual Imposition – a potential aggregate prison term of 21 years and two months. For reasons stated below, the maximum potential sentence for each felony charge was only three years. The courts which have considered this issue have held that the overstatement of the maximum penalty does not constitute grounds for vacating a plea in the absence of demonstrable prejudice. No such showing has been made in the present case. *State v. Tutt*, 12th Dist. Preble No. CA2020-02-002, 2021-Ohio-96, ¶ 16 ("a trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a)") (citation omitted); *State v. Betts*, 4th Dist. Vinton No. 17CA706, 2017-Ohio-8595, ¶ 28-29; *State v. Calvin*, 8th Dist. Cuyahoga No. 100296, 2015-Ohio-2759, ¶ 24 ("[i]t is hard to demonstrate prejudice when an overstatement of the maximum penalty was given").

{¶26} The seventh assignment of error is without merit.

{¶27} As a result of pleading guilty, Garcia waived the right to challenge the trial court's denial of his Motion to Sever Trial and Motion to Obtain Inmate's Recorded Telephone Calls, raised in the eighth and ninth assignments of error respectively. It is well-established that "[a] defendant who enters a voluntary plea of guilty while represented by competent counsel waives all nonjurisdictional defects in prior stages of the proceedings." (Citation omitted.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-

9

2459, 38 N.E.3d 860, ¶ 19; *State v. Wachter*, 11th Dist. Geauga No. 2019-G-0187, 2019-Ohio-4318, ¶ 15 ("[b]y entering his guilty plea, appellant waived his right to challenge rulings on pretrial motions"). Among these nonjurisdictional defects are issues regarding joinder and discovery. *State v. Wilson*, 8th Dist. Cuyahoga No. 105876, 2018-Ohio-3666, ¶ 6 ("[t]his waiver includes the right to challenge the denial of a Crim.R. 14 motion to sever or motion for relief from joinder"); *State v. Dugas*, 2d Dist. Montgomery No. 28770, 2021-Ohio-731, ¶ 5 ("Dugas's guilty plea * * * waived any error for appeal regarding the trial court's handling of discovery issues").

{¶28} The eighth and ninth assignments of error are without merit.

{¶29} In the first assignment of error, Garcia argues that the trial court abused its discretion by denying his Motion to Withdraw Guilty Pleas where the Motion was made prior to sentencing, he maintained his innocence, and he was suffering from depression and severe anxiety at the time he entered his pleas.

{¶30} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed * * *." Crim.R. 32.1. As a general rule, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *Id.* at paragraph one of the syllabus. "A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *Id.* at paragraph two of the syllaus. Thus, it is for the trial court "to determine what circumstances justify granting such a motion," and for the reviewing court to affirm that

10

decision unless it is unreasonable, arbitrary, or unconscionable. (Citation omitted.) *Id.* at 526-527.

{¶31} This court has often held that a trial court does not abuse its discretion when denying a presentence motion to withdraw a guilty plea: "(1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." *State v. Taylor*, 2015-Ohio-2080, 33 N.E.3d 123, ¶ 32 (11th Dist.), quoting *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.), paragraph three of the syllabus. These conditions are certainly satisfied in the present case.

{¶32} In support of the Motion to Withdraw Guilty Pleas, an affidavit from Garcia was submitted in which he claimed:

> 4. I only pled guilty out of fear and panic that I could be sentenced to a lengthy and severe prison term if I proceeded to jury trial and lost. Following my plea I met with a counselor and was diagnosed with severe anxiety and depression. These untreated mental conditions caused me to enter the plea because at the time I felt I had no other options. This fear and panic clouded my judgment and prohibited me from truly understanding my trial rights and the consequences of my plea.
>
> 5. I was also afraid that I would not be able to get a fair trial due to the significant media attention given to my case, in addition to the national media's treatment of other cases with similar charges. Seeing the county judges recuse themselves from my case also caused fear that I would not receive a fair trial.
>
> 6. I was worried about the prospect of catching the coronavirus in prison if I lost at trial and believe that, due to my serious health conditions (high blood pressure, gallbladder removal, multiple hernia surgeries) that I would die in prison from COVID-19.

11

7. After further contemplation I realize that these fears were misplaced and I now, for the first time, have a better understanding of the consequences of my plea and my rights to trial.

{¶33} We find no abuse of discretion in the denial of the Motion to Withdraw Guilty Pleas. The trial court construed Garcia's reasons for wanting to withdraw his guilty pleas as a "change of heart," and "it is well-established that a change of heart regarding a decision to enter a plea is insufficient to serve as a bases for withdrawing one's plea." *State v. Shaibi*, 11th Dist. Lake No. 2020-L-096, 2021-Ohio-660, ¶ 6 (cases cited); *State v. Hopkins*, 7th Dist. Mahoning No. 07 MA 31, 2008-Ohio-2926, ¶ 13 ("[n]ormally, courts will not allow pleas to be withdrawn because of mere regret about the decision to enter the plea in the first place"). Garcia claims that his plea was the product of fear and panic regarding the prospect of a lengthy prison sentence (according to the maximum penalties under the two Indictments, Garcia faced a potential aggregate prison term of 184 years), doubts about receiving a fair trial, and the possibility of contracting COVID if incarcerated. To some extent, such fears are justifiable and may have induced Garcia entering pleas that, upon further reflection, he wished he had not made. They do not render his pleas involuntary. It is never explained in Garcia's affidavit what aspects of the charges or the consequences of pleading he was unable to comprehend as a result of his mental distress. Nor was it explained how the diagnoses of depression and anxiety prevented Garcia from understanding what he was doing by pleading guilty. *Compare State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 56 ("[t]he constitutional standard for assessing a defendant's competency to enter a guilty plea is the same as that for determining his competency to stand trial").

Case Nos. 2020-A-0034, 2020-A-0035

{¶34} Although the particular circumstances may vary widely, there is abundant precedent of appellate courts affirming the denial of motions to withdraw pleas based on claims that they were induced by fear and panic. *State v. Risner*, 3d Dist. Wyandot No. 16-20-05, 2021-Ohio-342, ¶ 19; *State v. Delaney*, 4th Dist. Jackson No. 19CA9, 2020-Ohio-7036, ¶ 28; *State v. Grabe*, 7th Dist. Mahoning No. 19 MA 0115, 2020-Ohio-4435, ¶ 22; *State v. Bronaka*, 11th Dist. Lake No. 2007-L-095, 2008-Ohio-1334, ¶ 22 ("[d]efendant's subjective belief that he could not get a fair trial * * * is not sufficient to invalidate a guilty plea") (citation omitted).

{¶35} The trial court identified other factors commonly cited as relevant in determining a motion to withdraw a guilty plea: The motion was made two days before sentencing and over two months after the pleas were entered. *Risner* at ¶ 19 (the trial court found "[i]t took almost two months for Defendant to discover that she had pled guilty to something she claims not to have done because of fear and panic"). Garcia received a "full" Criminal Rule 11 colloquy to which defense counsel did not take exception during the hearing on the Motion to Withdraw Guilty Pleas. Garcia appeared to the trial court judge "composed and in full command of his faculties" at the time he entered his plea. Garcia counters that, because the plea colloquy was conducted via Zoom, his hands, legs, and feet would not have been visible to the trial judge. However, Garcia was in his attorney's presence when the pleas were given and nothing in the record, either the affidavit or the psychological report, indicates that Garcia's depression and anxiety manifested itself corporally. *Grabe* at ¶ 22 (defense counsel "saw no indication" that fear and panic caused the defendant to plead).

{¶36} The first assignment of error is without merit.

13

Case Nos. 2020-A-0034, 2020-A-0035

{¶37} In the fourth assigment of error, Garcia argues the trial court abused its discretion by denying his Motion for Continuance of the Sentencing Hearing where the COVID-19 pandemic posed unique dangers to Garcia in a prison setting.

{¶38} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus. "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* at 67. Additional factors to consider include: "the length of the delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Landrum*, 53 Ohio St.3d 107, 115, 559 N.E.2d 710 (1990). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process," rather the "answer must be found * * * particularly in the reasons presented to the trial judge at the time the request is denied." *Unger* at 67, citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

{¶39} The basis for Garcia's Motion for Continuance of Sentencing Hearing was not, as argued on appeal, concerns for Garcia's health in a prison environment during a time of pandemic. Rather, the written Motion sought "to continue sentencing to a future date after the Court rules on the Motion to Withdraw the Plea[s]" because the "sentencing brief contains information which is not proper for the State to have if the Motion to Withdraw the Plea is granted."

{¶40} Prior to sentencing, the trial court denied the Motion to Withdraw Guilty Pleas and heard argument on the Motion for Continuance. Garcia argued for a

14

postponement of sentencing "for a very short period of time" to allow the defense to submit its sentencing memorandum which included a psychological evaluation which the defense did not wish to make available to the prosecution until the Motion to Withdraw had been ruled upon. When the court refused to continue the sentencing hearing, the defense moved for a recess to allow the court to review the memorandum and evaluation which the court granted.

{¶41} On appeal, Garcia claims the trial court committed a "clear abuse of discretion" by not continuing sentencing given that "the dangers the novel corona virus and global pandemic in a prison setting place Mr. Garcia's life, safety, and well-being in jeopardy." Appellant's brief at 22. We find no abuse of discretion. The court appropriately accommodated Garcia's concerns, the ones actually raised in the Motion for Continuance, by recessing to consider the defense's sentencing memorandum. The COVID pandemic was not put forward as a reason to continue sentencing and, even if it had been so argued, would not have constituted valid grounds for delaying sentencing. *See State v. Horner*, 5th Dist. Licking No. 2020 CA 00080, 2021-Ohio-1312, ¶ 15-16 (discussing, within the context of the risks posed by COVID-19, the appropriate remedies "[w]hen a prisoner seeks immediate or speedier release from incarceration" and when he "challenges the conditions of his confinement").

{¶42} The fourth assignment of error is without merit.

{¶43} In the fifth assignment of error, Garcia argues that the trial court erred in denying his Objections to the Presentencing Investigation Report and a Request for New, Independent Unbiased Report on the grounds that the probation officer producing the report should have been disqualified.

15

{¶44} When a presentence investigation report is prepared following a felony conviction, "the court, at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report * * *." R.C. 2951.03(B)(1). "Prior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report." R.C. 2951.03(B)(2). "If the comments of the defendant or the defendant's counsel, the testimony they introduce, or any of the other information they introduce alleges any factual inaccuracy in the presentence investigation report * * *, the court shall do either of the following with respect to each alleged factual inaccuracy: (a) Make a finding as to the allegation; (b) Make a determination that no finding is necessary with respect to the allegation, because the factual matter will not be taken into account in the sentencing of the defendant." R.C. 2951.03(B)(5).

{¶45} Garcia's Objections to the report raised two claims. The first was that the Ashtabula County Probation Office had a conflict of interest in this case which required "a new Presentence Investigation Report to be completed by an independent probation office outside of Ashtabula County." Garcia reasoned that "the three initial judges in Ashtabula County recused themselves due to conflict as did the Ashtabula County Prosecutor's Office." Since the probation department is a department of the court, it had "just as strong a potential for improper bias in this case as did the judges and prosecutor who saw fit to recuse themselves." R.C. 2301.27(A)(1)(a) ("[t]he court of common pleas may establish a county department of probation").

16

{¶46} Second, Garcia argued that there were factual inaccuracies in the report inasmuch as the probation officer based his sentencing recommendation[1] "not on the crimes to which Mr. Garcia pleaded guilty, but on the totality of the allegations brought initially by the State in this matter – the vast majority of which the State was unable to prove and subsequently dismissed." The probation officer's sentencing recommendation also demonstrated actual bias as he failed to consider Garcia's age, likelihood of recidivism, and the time period when the alleged incidents occurred.

{¶47} The trial court denied Garcia's request for a new report finding no evidence of bias. The court noted that the report accurately identified which charges resulted in convictions and which were dismissed and duly noted Garcia's ORAS (Ohio Risk Assessment System) score, lack of criminal record, age, health, and background. Further, the court rejected "the notion that a court's probation department should be disqualified from rendering services to a visiting judge if the regular judge recuses himself or herself."

{¶48} On appeal, Garcia argues that the probation officer assigned to his presentence investigation should have been disqualified based on the "appearance of impropriety * * * since Mr. Garcia served years in public service in the Conneaut City Council and was well known in the community." Appellant's brief at 24. We disagree.

{¶49} Preliminarily, we note that Garcia has failed to establish that an "appearance of impropriety" exists. There is no obvious conflict or connection between Garcia's membership in the Conneaut City Council and the county probation department.

---

1. Pursuant to R.C. 2951.03(B)(1)(a), "the court shall not permit the defendant or the defendant's counsel to read * * * [a]ny recommendation as to sentence." As noted by the trial court, in this case "the defense was inadvertently provided [the sentencing recommendation] when it should not have been."

Case Nos. 2020-A-0034, 2020-A-0035

Garcia suggests that whatever conflict compelled the common pleas court judges to recuse themselves should apply to the probation department. The county judges, however, did not recuse themselves to avoid the appearance of impropriety or conflict. Rather, they recused themselves pursuant to Ohio Code of Judicial Conduct 2.11(A)(1) which provides that a judge shall disqualify himself or herself when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal *knowledge* of facts that are in dispute in the proceeding." There is little reason to impute the trial judges' personal bias, prejudice or knowledge to the probation department.

{¶50} The State argues that there is "no basis in Ohio law for the remedy Garcia seeks." Appellee's brief at 23. But such a remedy is not without precedent in the appropriate circumstances. *See, e.g., State v. Griffeth*, 5th Dist. Richland No. 10-CA-115, 2011-Ohio-4426, ¶ 5 ("[s]ubsequent to this confrontation [between appellant and a chief probation officer for the APA], Appellant's supervision was transferred to the Richland County Probation Office to avoid any conflict of interest with the APA supervision of Appellant"). There are no established criteria for disqualification applicable to a probation officer or department of which this court is aware. One issue to consider is whether the mere appearance of impropriety or conflict is grounds for disqualification or whether a party must demonstrate an actual conflict with resulting prejudice. *Compare In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 ("[a] judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality") and Jud.Cond.R. 1.2 ("[a] judge * * * shall avoid *impropriety* and the appearance of *impropriety*") with *State v. Hill*, 2018-Ohio-4800, 125 N.E.3d 158, ¶ 94 (11th Dist.) ("the mere appearance of impropriety

18

in a government office is not sufficient, in and of itself, to warrant disqualification of the entire office") (citation omitted). The issue is one we need not resolve in the present case, inasmuch as we find that the recusal of the common pleas court judges and prosecutor's office does not create an appearance of impropriety with respect to the probation department.

{¶51} As evidence of actual bias, Garcia claims "the probation officer who interviewed [him] refused to allow counsel for Mr. Garcia to be present during the interview." Appellant's brief at 24. This claim is wholly unsubstantiated. It was not an argument raised in the Objections to the Presentencing Investigation Report and is not evidenced in the record before this court. Accordingly, it will not be considered on appeal. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10 ("[a] first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below").

{¶52} As further evidence of bias, Garcia asserts that the probation officer "completely declined to apply felony sentencing factors and instead * * * requested the Court to impose a maximum sentence" despite "finding an ORAS score of 6, which indicates low probability of recidivism." Appellant's brief at 24. We agree with the trial court that there is no evidence of bias in the report. Contrary to Garcia's assertion, there is no requirement that the probation officer compiling the report apply the sentencing factors that the sentencing court must consider when imposing a sentence. Rather, "the officer making the report shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant, all information available regarding any prior adjudications of the defendant as a delinquent child and

19

regarding the dispositions made relative to those adjudications * * *." R.C. 2951.03(A)(1). Nor can it be said that the sentencing recommendation in the report is evidence of bias. The report simply recommends the "max term" for the crimes to which Garcia pled and the stated reasons for the recommendation in the report do not reflect any personal animus toward Garcia. It should also be noted that the sentencing recommendation is not a factual finding and not binding on the sentencing court. *State v. Bray*, 2d Dist. Clark No. 2016-CA-22, 2017-Ohio-118, ¶ 33; *State v. Roberson*, 141 Ohio App.3d 626, 632, 752 N.E.2d 984 (6th Dist.2001). Likewise, as argued by the State, a defendant's ORAS score is only a factor, one of limited applicability to sexual offenders, for the court to consider in fashioning a sentence. *State v. Snider*, 4th Dist. Washington No. 20CA5, 2021-Ohio-348, ¶ 24-25.

{¶53} The fifth assignment of error is without merit.

{¶54} In the sixth assignment of error, Garcia argues that the trial court abused its discretion "[b]y prohibiting Mr. Garcia from presenting mitigating evidence in response to the State's claims that the victims were under the age of sixteen (16) at the time of the offense." Appellant's brief at 27.

{¶55} Before imposing a sentence on an offender who pleaded guilty to a felony, the court shall hold a sentencing hearing at which "the offender, the prosecuting attorney, the victim or the victim's representative * * * and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case." R.C. 2929.19(A). "An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).

20

{¶56} Garcia pled guilty to third-degree Compelling Prostitution, i.e., that he did "[p]ay or agree to pay a minor * * * so that the minor will engage in sexual activity, whether or not [he knew] the age of the minor." R.C. 2907.21(A)(3)(a). A minor is defined as "a person under the age of eighteen." R.C. 2907.01(M). For a violation of division (A)(3), Compelling Prostitution is a felony of the third degree. R.C. 2907.21(C).

{¶57} In a written statement contained in the presentence investigation report, Garcia wrote: "I would like to impress upon the Court that all of these relationships took place with individuals over the age of 18 years old." According to the victims' statements contained in the official reports, the sexual activity occurred when they were as young as thirteen or fourteen years old.

{¶58} At the sentencing hearing, these positions were reiterated by the parties. Garcia's brother addressed the court and asserted that "there is no crime when two adults have consensual relationships." Garcia's attorney addressed the court as follows:

> But over the past two years, Judge, we have been able to boil this case down to what it really is. What you have, Your Honor, is you have got an individual who had a relationship with a couple of guys, I say guys, I should say men, over the age of eighteen. He had a relationship with them and some of these relationships were sexual.

And again, Garcia's attorney addressed the court as follows:

> I'm not here to stand in front of you, Judge, and blame a victim. I know that's not what this Court wants me to do. But there was also responsibility. These were grown men. They were over the age of eighteen and they were receiving money.

{¶59} At another point in the sentencing hearing, the following exchange occurred between the sentencing judge and defense counsel:

> Counsel: What I can tell you is that we, through the discovery process, have been able to find that all of these allegations that these people were thirteen or fourteen years old are, in fact, false. * * *

21

Case Nos. 2020-A-0034, 2020-A-0035

The Court: Mr. Yoder, I'm going to redirect you here, because all I'm looking at in terms of age, is four felonies wherein the defendant pled guilty of paying sex for hire of minors, over the age of sixteen. That's all I'm looking at. That's what the crimes I'm sentencing your client for. I'm not sentencing him for anything under that or in the cases of the felonies or anything over that [sic], because over that it's legal, unless of course it's prostitution.

Counsel: The concern I have, Your Honor is not only in the presentence investigation report, but then also I believe in arguments that the State [is] going to make is that these individuals were under the age of sixteen and if the Court's telling me –

The Court: And I'll remind them the same thing I just told you.

Counsel: So the Court would not consider that relevant when it comes to sentencing?

The Court: No.

{¶60} In its presentation at the sentencing hearing, the State recounted the details of the offenses as reported by the victims and contained in the presentence investigation report. According to the first victim's version of events, he was thirteen at the time of the incident. Defense counsel interjected as follows:

Counsel: Judge * * *, I was not permitted to get into any of the specific facts that were not included in what Mr. Garcia pled guilty to, which is four counts of compelling prostitution. And the Court had indicated that you have to follow that they were over the age of sixteen at the time. I tried to provide a defense that they were over the age of eighteen and this Court indicated that we're not getting into that.

The Court: Because your client pled guilty to that, that they were minors.

Counsel: Judge, you're missing the point. What the State's trying to do right now is argue that they were thirteen at the time. I had evidence that I was going to present and you said that's not relevant. It's not important to me, because I follow the fact that he pled guilty to four counts of compelling prostitution, felonies of the third degree.

22

The Court:   I'm going to give the State some leeway in the sense that your client is now claiming that everybody was over eighteen. * * * [Addressing the prosecutor:] The primary thrust of this is not going to be an effort to show that these people are less than sixteen years of age?

Prosecutor:   No, Your Honor. It's to give circumstantial background as to what took place.

{¶61} We find the trial court's rulings neither erroneous nor prejudicial. The court allowed Garcia to argue the position taken in the presentence investigation report, that the victims were not minors, but did not allow him to introduce evidence contrary to the offenses to which he pled guilty. Likewise, the State was allowed to repeat the victims' version of events, but not to argue for a sentence based on ages beyond the offenses to which Garcia pled. Stated otherwise, the parties were allowed to make arguments based on information contained in the presentence investigation report, but the court did not allow the sentencing hearing to become an evidentiary hearing where the parties attempted to relitigate the charges. There was nothing improper about the manner of the court's conduct of the sentencing hearing. This court has expressly recognized that a sentencing "court is entitled to consider the victim's version of events as reported in a presentence report despite the offender's plea to a lesser charge." *State v. Kittelson*, 2016-Ohio-8430, 78 N.E.3d 355, ¶ 45 (11th Dist.); *State v. Wilson*, 11th Dist. Ashtabula No. 2020-A-0003, 2020-Ohio-3857, ¶ 20.

{¶62} In this regard, it is worth noting the counts of Compelling Prostitution to which Garcia pled, division (A)(3) of R.C. 2907.21, are only predicated on the victims being minors, i.e., under the age of eighteen. A violation of division (A)(3) is a third-degree misdemeanor regardless of the specific age of the victim. In contrast, for a

23

violation of division (A)(1) which requires the element of compulsion, Compelling Prostitution is a second-degree felony if the victim is "sixteen years of age or older but less than eighteen years of age" but a first-degree felony if the victim is "less than sixteen years of age." R.C. 2907.21(C). For the purposes of division (A)(3), however, the victim's age is not relevant beyond the fact of minority. It was not relevant whether the victims were above or below the age of sixteen. Moreover, Garcia pled guilty to seven counts of Sexual Imposition in violation of R.C. 2907.06(A)(4), whereby he admitted having had sexual contact with another, causing another to have sexual contact with him, or causing two or more persons to have sexual contact when "[t]he other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age." If some of the victims claimed to have been thirteen or fourteen at the time they were prostituted, Garcia cannot claim prejudice inasmuch as he admitted to engaging in sexual contact with persons of that age.

{¶63} Above all, the trial court expressly stated that it would not consider the victims' ages below the age of sixteen. Absent evidence to the contrary, we presume the court followed its own advisement. Accordingly, the court did not abuse its discretion by prohibiting Garcia from presenting mitigating evidence that the victims were adults and/or over the age of consent.

{¶64} The sixth assignment of error is without merit.

{¶65} In the second assignment of error, Garcia contends that the trial court erred by sentencing him to five years in prison on three of the Compelling Prostitution counts, beyond the statutory maximum of three years or thirty-six months. R.C. 2929.14(A)(3)(b). The State concedes the error.

24

Case Nos. 2020-A-0034, 2020-A-0035

{¶66} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the sentence is * * * contrary to law." R.C. 2953.08(G)(2)(b). A sentence that is outside the prescribed range for a particular offense is contrary to law. *State v. Brown*, 11th Dist. Lake No. 2020-L-052, 2020-Ohio-4642, ¶ 4.

{¶67} As Garcia explains in his brief, at the time he committed the acts constituting Compelling Prostitution, the maximum sentence for a third-degree felony was five years. Former R.C. 2929.14(A)(3). At the time Garcia was sentenced for these crimes, the maximum prison term for a violation of R.C. 2907.21 had been reduced to thirty-six months by the enactment of H.B. 86, effective September 30, 2011. R.C. 2929.14(A)(3)(b). "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." R.C. 1.58(B). Accordingly, thirty-six months was the maximum prison term that could be imposed for Compelling Prostitution. *State v. Thomas*, 148 Ohio St.3d 248, 2016-Ohio-5567, 70 N.E.3d 496, ¶ 14 ("if the provisions of H.B. 86 reduced the potential sentence for an offense, then R.C. 1.58(B) gives offenders not yet sentenced the benefit of the reduced sentence").

{¶68} Contrary to the position taken by Garcia in his brief, sentences imposed for these counts of Compelling Prostitution are voidable rather than void ab initio. The Ohio

25

Supreme Court has restored the traditional understanding of what constitutes a void sentence: "A judgment or sentence is void only if it is rendered by a court that lacks subject-matter jurisdiction over the case or personal jurisdiction over the defendant. If the court has jurisdiction over the case and the person, any sentence based on an error in the court's exercise of that jurisdiction is voidable." *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-8784, 162 N.E.3d 776, ¶ 43. "If the court pronouncing the sentence had jurisdiction to do so, a sentence imposed in excess of that permitted by law was 'erroneous and voidable, but not absolutely void.'" *Id.* at ¶ 16, citing *Ex parte Van Hagan*, 25 Ohio St. 426, 432 (1874).

{¶69} The second assignment of error is with merit.

{¶70} In the third assignment of error, Garcia maintains the trial court failed to comply with the pertinent sentencing statutes when imposing maximum and consecutive sentences. Garcia first argues that the trial court failed to comply with R.C. 2929.11(B) by imposing a sentence that is inconsistent with sentences given to other similar offenders, and that the evidence in the record did not support the court's finding with respect to the seriousness and recidivism factors in R.C. 2929.12. Appellant's brief at 16-17.

{¶71} "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing." R.C. 2929.11(A). "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." *Id.* "A

26

sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶72} When imposing a sentence for a felony, the trial court "has discretion to determine the most effective way to comply with the purposes and principles of [felony] sentencing" and "shall consider the factors * * * relating to the seriousness of the conduct" and "the factors * * * relating to the likelihood of the offender's recidivism." R.C. 2929.12(A). A non-exhaustive list of factors relating to the seriousness of the conduct and the likelihood of recidivism is set forth in divisions (B), (C), (D), and (E) of R.C. 2929.12.

{¶73} The Ohio Supreme Court has described these two statutory sections "as a general judicial guide for every sentencing" in which "there is no mandate for judicial fact-finding." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 36 and 42; *State v. Jones* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20 ("neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record"). The appellate review of felony sentences established by R.C. 2953.08(G)(2)(b) "therefore does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 39; *State v. Stanley*, 11th Dist. Lake No. 2020-L-065, 2021-Ohio-108, ¶ 35 ("a sentencing court's compliance with R.C. 2929.11 and 2929.12 does not provide grounds for a reviewing court to vacate or otherwise modify a sentence

27

pursuant to R.C. 2953.08(G)(2)").

{¶74} Accordingly, Garcia's claim that the record does not support the trial court's findings under R.C. 2929.12 is without foundation. Similarly, the claim that Garcia's sentence is inconsistent with that of similarly situated offenders is unavailing. This court has long held that "sentencing consistency is not derived from the trial court's comparison of the current case to prior sentences for similar offenders and similar offenses," but, rather, it is the "proper application of the statutory sentencing guidelines that ensures consistency." (Citations omitted.) *State v. Phifer*, 11th Dist. Trumbull No. 2020-T-0010, 2020-Ohio-4694, ¶ 35. In the present case, there is no dispute that the court considered the purposes of felony sentencing, including proportionality, as well as the seriousness and recidivism factors. While Garcia may disagree with the court's weighing or application of these sentencing considerations, that is not a valid basis for vacating his sentences.

{¶75} Garcia raises arguments regarding the imposition of consecutive sentences. He claims that the court abused its discretion by imposing consecutive sentences "based on its belief that Mr. Garcia had committed rape offenses against persons under the age of 16, instead of basing its sentence upon the (less serious) charges before the court." Appellant's brief at 19. We find nothing in the record to support Garcia's position that the court based its sentence on the belief that he committed rape against persons under the age of sixteen. In sentencing him, the court never referred to his crimes as rapes nor specifically to the ages of the victims. Rather, the court describes them as "minors" and "under eighteen." And, as noted above, the court expressly stated that, with respect to the felony counts, it would base its decision on the charges to which

28

he pled.

{¶76} We further note "that appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10. With respect to consecutive sentences, a reviewing court "may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14." R.C. 2953.08(G)(2); *Marcum* at ¶ 22; *State v. Maple*, 11th Dist. Ashtabula No. 2018-A-0091, 2019-Ohio-2091, ¶ 9 ("[o]n appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court to review the record, including the findings underlying the sentence, and to modify or vacate the sentence if it clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)").

{¶77} Under R.C. 2929.14(C)(4), a sentencing court is required to make three distinct findings in order to require an offender to serve consecutive prison terms: (1) that consecutive sentences are "necessary to protect the public from future crime or to punish the offender"; (2) that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; (3) "and * * * also" that one of the circumstances described in subdivision (a) to (c) is present. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252. Moreover, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209,

29

2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶78} Garcia does not contend that the trial court failed to make the necessary statutory findings mandated by R.C. 2929.14(C)(4). Rather, he claims the record does not support the court's finding that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). Garcia emphasizes that he was sixty-five at the time of sentencing, he had no criminal record, there were no issues with substance abuse, and ten years had passed since the events giving rise to the charges to which he pled during which he lived a law-abiding life.

{¶79} We acknowledge that there have been cases in which consecutive sentences have been vacated in circumstances similar to those in the present case. *See* *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 and 2018-L-064, 2019-Ohio-2505, ¶ 34 ("[a]ll of the factors * * * suggest little to no likelihood of appellant committing future crime, with the exception of the lack of remorse"); *State v. Regalo,* 8th Dist. Cuyahoga No. 108430, 2020-Ohio-917, ¶ 19 ("at the time of his sentencing, Regalo was 52 years of age[,] * * * had no alcohol or drug problems[,] * * * had no criminal record[,] * * * is not alleged to have engaged in any criminal conduct after he committed the offenses at issue," and was rated as "LOW Risk Level" for recidivism).

{¶80} In the present case, however, we do not conclude that the trial court's findings that "the consecutive service is necessary to protect the public from future crime or to punish the offender" were not clearly and convincingly supported by the record. The court explained its justification for Garcia's sentence as follows:

30

The court finds that the defendant committed these offenses not as part of a brief criminal episode in his life. Instead Mr. Garcia's was a criminal saga of sorts, that encompassed many victims and a * * * multitude of offenses. And this went on for a decade or more. These crimes were perpetuated not as a foolish or impetuous or brash or impulsive young man, but as a middle-aged adult, preying on those twenty-five to thirty years younger than the defendant.

These crimes were not inspired by anger or jealousy or rage or greed. They were not impulsive outbursts. These crimes were sex crimes planned and meticulously executed on Mr. Garcia's part, designed to avoid detection. And that was successful. Detection was avoided, despite the multiple crimes and victims for years. And the Court finds these facts significant.

The Court finds the defendant used his positions, ones of power and authority and influence to attempt and manipulate and intimidate these minors with respect to others, into submitting to [the] criminal intentions of the defendant.

Mr. Garcia, your community standing as a referee, a basketball referee, a business owner, and employer of many of your victims, * * * and councilman, served as a back drop for your actions. Now, many of these activities they were good. They're legal. You did some good things but it was the use of this position that led to the victimization of those in your employment, together with gifts. And gifts is in quotes, in order to buy the silence of the victims and pave the way for future criminal sexual encounters.

Now, not all the sexual encounters were illegal. Once the minor victims reached the age of eighteen and it was consensual – really consensual sex, that's no crime. Other than possibly some minor prostitution crimes, but nothing in the league of what we have here. Now, these relationships you do refer to in that written statement in the presentence investigation. And in it you recite that the individuals with whom you were intimate, that receive money, you would like to impress on the Court that all of these relationships took place with individuals over the age of eighteen years old. "If my actions hurt any of these individuals, I'm truly sorry." But this statement with respect to over [age] eighteen individuals, it misses the mark, because your crimes were with those under eighteen, not over eighteen.

And the illegal sexual impositions upon the other seven, they aren't addressed in your statement. In passing, you mention that if your actions caused any harm, I'm truly sorry. Well, * * * these kinds

31

of actions with young men and minors, there's no "if" about causing it, it's presumed. Especially when * * * there's a forty-five-year-old man. Some of these people are the employees of the forty-five-year-old man. He has been posing and paying them for sex.

This attitude exhibits a gross insensitivity and a lack of true remorse. Lack of a genuine profound remorse prompts the Court to find that the defendant still poses a threat of recidivism and a danger to the public. This despite the defendant's age. I don't need to remind those who studies cases [sic] relating to sex offenders, that many, many sex offenders commit sex crimes well into their senior years.

{¶81} While the trial court's concerns for recidivism were based on a lack of remorse and the nature of the offenses, i.e., sexual offenses, the court presented a compelling argument, based on the record before it, that to punish Garcia in a manner proportionate to the seriousness of his conduct consecutive sentences were necessary. It should be emphasized that the necessary findings for imposing consecutive sentences are written disjunctively – they must be necessary to protect the public from future crime *or* to punish the offender. Given the "extremely deferential" standard of review to be applied in reviewing the imposition of consecutive sentences, we find no error in the present case. *State v. Guth*, 11th Dist. Portage No. 2015-P-0083, 2016-Ohio-8221, ¶ 23 (R.C. 2953.08(G)(2) "does not say that the trial judge must have clear and convincing evidence to support its findings," but "it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings"); *State v. Smith*, 2d Dist. Montgomery No. 28417, 2020-Ohio-304, ¶ 13.

{¶82} Finally, Garcia argues that the three-year sentence imposed for the fourth count of Compelling Prostitution (Count 20) should be reversed because it was imposed under the mistaken belief that the maximum sentence was five years: "the court noted the conduct underlying count 20 was less severe than that of the other similar counts and

32

further only involved one alleged encounter with that victim." Appellant's reply brief at 4. We agree.

{¶83} In contrast to the other three counts of Compelling Prostitution for which the trial court imposed (what it mistakenly believed to be) the maximum sentence of five years, the court imposed a three-year sentence for Count 20 on the grounds that "that was the one encounter, which while it's claimed caused great distress and no doubt it caused some it was yet one encounter, for that there is a three-year term of imprisonment." Inasmuch as a three-year sentence is the maximum sentence that could be imposed for Compelling Prostitution, the record fails to support the court's reasoning for imposing that sentence.

{¶84} The third assignment of error is with merit to the extent indicated above.

{¶85} For the foregoing reasons, Garcia's sentences for Compelling Prostitution are reversed and this matter is remanded for resentencing on those counts only. In all other respects, the judgment of the Ashtabula County Court of Common Pleas is affirmed. Costs to be taxed against the parties equally.

MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case Nos. 2020-A-0034, 2020-A-0035